1
2
3
4
5

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY RONNELL PERKINS,<br><br>Plaintiff,<br><br>v.<br><br>JUDITH HOLMES, *et al.*,<br><br>Defendants. | Case No. 1:23-cv-01607-JLT-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT MOVING DEFENDANTS' MOTION TO PARTIALLY DISMISS PLAINTIFF'S COMPLAINT BE DENIED.<br><br>(ECF No. 20)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

Gary Ronnell Perkins ("Plaintiff") is a prisoner proceeding *pro se* in this civil rights action filed pursuant to 42 U.S.C. § 1983.  Plaintiff's complaint arises from his claim that Defendants acted with deliberate indifference to his serious medical needs by denying him orthotics and refusing to refer him to podiatry due to a change in the institution's criteria for providing such care, despite knowing Plaintiff had been prescribed orthotics since 2006 and needed them as treatment for pain related to his bunions. (ECF No. 1).  The Court previously screened Plaintiff's complaint and allowed his Eighth Amendment claim for deliberate indifference to serious medical needs to proceed past screening.  (ECF No 7).

On December 12, 2024, Defendants Holmes, Gu, Mevi, Gates, Johnson, Magana, Sustaita, Longcor, and Longia (Moving Defendants) filed a motion to partially dismiss Plaintiff's complaint arguing that Plaintiff fails to state a claim for deliberate indifference to

1

serious medical needs in violation of the Eighth Amendment because the grievance responses indicate that Defendants provided sufficient care and because certain Defendants merely did not intervene in response to Plaintiff's grievances or denied Plaintiff's request as part of a panel.  (ECF No. 20).

For the following reasons, the Court recommends denying Moving Defendants' motion to dismiss.

## I.       BACKGROUND

### A.  Plaintiff's Complaint

Plaintiff's complaint (ECF No. 1) alleges as follows:

On or about January 25, 2006, Plaintiff was examined by a physician at Kern Valley State Prison and referred to a podiatrist.  On March 21, 2006, Plaintiff was examined by a podiatrist who diagnosed Plaintiff with "Hallux Vaigus (bunions) bilateral feet" and ordered Plaintiff orthotic shoes.  On or about March 9, 2009, Plaintiff was transferred to Centinela State Prison, and he continued to receive orthotic shoes until his transfer to Chuckawalla Valley State Prison (CVSP).

While at CVSP, Plaintiff filed a health care grievance.  On May 1, 2020, he received a response to the grievance, which confirmed that he has previous referrals for orthotic visits with specialty shoes, and that he had been approved for orthotics on multiple dates over several years.  The response also stated that new orthotics would be ordered.

In January of 2020, the CCHCS care guide was changed and instituted a new policy denying prisoners orthotic/therapeutic footwear regardless of medical need.

On or about June 18, 2021, Plaintiff was examined by Defendant Dr. Judith Holmes via video.  Plaintiff informed Dr. Holmes that he was experiencing excruciating pain when walking due to a bunion on his left big toe, and Plaintiff requested replacement orthotic shoes and custom insoles.  Plaintiff alleges Dr. Holmes lied to him by saying she could not see any documentation in medical records that Plaintiff was ever prescribed orthotic shoes or custom insoles.  Plaintiff told Dr. Holmes he had been prescribed orthotics since 2006.  Plaintiff tried to tell her about the response to the Health Care Grievance that confirmed this.  Defendant

Holmes refused to acknowledge the documentation and stated that based on the new policy Plaintiff does not fit the criteria for a podiatrist consult.

On June 20, 2021, Plaintiff submitted a Health Care Grievance regarding the denial of orthotic shoes. On August 17, 2021, Defendant J. Mevi reviewed the Health Care Grievance. Plaintiff alleges that Defendant Mevi, as the Chief Physician and surgeon, had the authority and opportunity to prevent the ongoing actions of Dr. Holmes but failed to intervene.

Plaintiff was seen several times by Dr. Holmes, and Plaintiff repeatedly told Dr. Holmes of the pain he was suffering and requested orthotic shoes to relieve the pain.

On or about December 2, 2021, Defendant S. Gates reviewed Plaintiff's health care grievance at the headquarters level. Gates failed to intervene to secure medical care for Plaintiff. On or about February 1, 2022, Plaintiff saw Dr. Holmes regarding the pain and discomfort he experienced while walking caused by the bunion. Dr. Holmes examined Plaintiff and stated that she saw redness, inflammation, and abnormal positioning of the toe, but she stated she did not see a bunion. Dr. Holmes refused Plaintiff's request for an order for examination and consult by a podiatrist.

On February 2, 2022, Plaintiff submitted a second Health Care Grievance against Dr. Holmes. On April 1, 2022, Dr. Mevi reviewed the Health Care Grievance and indicated no intervention despite acknowledging that Dr. Johnson had noted the presence of a bunion. On May 26, 2022, Defendant Gates reviewed the grievance at the headquarters level and indicated no intervention despite acknowledging that Plaintiff suffered from a painful bunion.

On January 27, 2023, Plaintiff had an appointment with Dr. Gu. Plaintiff told Dr. Gu about his foot pain and need for orthotic shoes and requested referral to a podiatrist. Defendant Gu refused to put in an order for orthotic shoes or refer Plaintiff to a podiatrist. On January 29, 2023, Plaintiff was seen by an unknown RN for pain in his foot and knee. On or about February 15, 2023, Plaintiff was seen by Dr. Gu and again explained his pain and need for orthotic shoes to relieve his pain when walking.

On or about March 2, 2023, Plaintiff had an appointment with Dr. Gu and explained to him that due to the "HC grievance," "VSP ADA said medical was supposed to supply

3

orthotics/custom insoles."  Plaintiff showed Defendant Gu a "chrono" that indicated current issued "Therapeutic shoes/orthotics permanent."  Defendant Gu refused to acknowledge Plaintiff's document.

On or about March 8, 2023, Plaintiff had another appointment with Dr. Gu, who refused to put in a referral due to headquarters and because pain is not a reason to issue orthotics. Plaintiff explained that his pain was often excruciating due to the pressure on his toe when walking.  Dr. Gu responded, "write headquarters up."

On or about March 16, 2023, Defendants K.D. Johnson, A. Magana, J. Sustaita, H. Longcor, and H. Longia as the Reasonable Accommodation Panel (RAP) declined to provide Plaintiff with orthotic shoes, stating: "The RAP considered all information provided and determined your reasonable accommodation request for orthotic shoes has been denied."

On March 23, 2023, Plaintiff submitted a health care grievance against each RAP member, CCHCS, and Dr. Gu.  On or about April 13, 2023, Plaintiff was again seen by Dr. Gu. Dr. Gu again refused to refer Plaintiff to a podiatrist.  On May 18, 2023, Dr. Mevi reviewed the grievance at the institutional level and failed to intervene.

On August 15, 2023, Plaintiff was seen by Dr. J. Chau, who examined Plaintiff's feet and observed a bunion and redness.  Plaintiff told Dr. Chau that he has been enduring pain in both left foot and knee and requires orthotic shoes.  Dr. Chau refused to make a referral to a podiatrist.  On August 15, 2023, Plaintiff submitted a grievance based on Dr. Chau's refusal. On September 13, 2023, the health care grievance office refused to process Plaintiff's grievance because it was a duplicate of earlier grievances.

**B.  Screening Order**

On June 21, 2024, this Court issued a screening order finding that Plaintiff's claim for deliberate indifference to serious medical needs against Defendants Dr. Judith Holmes, Dr. Wei Gu, Dr. J. Mevi, Dr. J. Chau, K.D. Johnson, A. Magana, J. Sustaita, H. Longcor, Dr. H. Longia, and S. Gates should proceed past screening.  (ECF No. 7).  In the order, this Court stated:

> Based on the allegations in Plaintiff's complaint, the Court finds that Plaintiff has sufficiently alleged a claim for deliberate indifference to serious medical needs to proceed past screening. Plaintiff alleges that he has a serious medical need for

orthotics, which is causing him pain and limiting his ability to walk properly. He has alleged that he was previously diagnosed with a condition requiring orthotics. However, he alleges that Defendants refused to provide the medical care or refer him to a podiatrist without justification.

Plaintiff has sufficiently asserted this claim against all Defendants except for CCHCS. Plaintiff has alleged that each individual Defendant either directly denied him care or refused to intervene as part of the appeals process. Additionally, Plaintiff has alleged that the supervisory Defendants are responsible for a policy that led to the denial of care.

(ECF No. 7 at p. 9).

## II.    MOVING DEFENDANTS' MOTION TO DISMISS

### A.  Moving Defendants' Motion

Moving Defendants filed a motion to dismiss on December 12, 2024.[1]  (ECF No. 20). Moving Defendants first argue that Plaintiff's allegations against Dr. Holmes and Dr. Gu are insufficient because they amount to a difference in medical opinion and do not rise to the level of deliberate indifference.  In support, Moving Defendants rely primarily on summaries of medical records set forth in various responses to Plaintiff's grievances, which are not included in the complaint.  Moving Defendants argue that the Court should consider those grievances in connection with the motion to dismiss and find that they establish that Defendants provided appropriate medical care.

Specifically, Moving Defendants argue that the grievance responses show that Dr. Holmes examined Plaintiff, ordered x-rays, and concluded that Plaintiff did not meet the criteria under the new prison policy to receive orthotics or for referral to podiatry.  Dr. Holmes also recommended Plaintiff request wider shoes.  Moving Defendants similarly argue that Dr. Gu examined Plaintiff, reviewed the x-rays, and determined Plaintiff did not meet the criteria under the new policy for orthotic footwear. Dr. Gu also recommended Plaintiff request wider shoes.

Next, Moving Parties argue that individual Defendants who merely declined to intervene in response to Plaintiff's grievance or were part of a panel that denied Plaintiff's

---

[1] Defendants concede that Plaintiff's complaint alleges a cognizable claim for deliberate indifference to serious medical needs against Dr. Chau, and Dr. Chau is not a moving party in this motion.

request for accommodation cannot be found to be deliberately indifferent.  Moving Defendants assert that Plaintiff's claim against Defendants Mevi and Gates fails because Plaintiff's allegations are "based solely on their involvement in responding to grievances at the institutional and headquarters levels."  (ECF No. 20-1 at p. 11).  Moving Defendants also argue that Dr. Mevi and Gates relied on the opinions of Plaintiff's treating doctors finding that Plaintiff did not meet the criteria for orthotics under the new prison policy.

Moving Defendants also argue that Plaintiff fails to state a claim against Defendants Johnson, Magana, Sustaita, Longcor, and Longia because they were merely part of a panel that jointly denied Plaintiff's requests.  Because they were part of a panel, Plaintiff fails to allege personal participation by any individual member of that panel.

Moving Defendants include a declaration from Joseph J. Raily, which authenticates and attaches 87 pages of exhibits, consisting of Plaintiff's grievances and responses related to his requests for orthotics and related care.  (ECF No. 20-2).

Lastly, Moving Defendants argue that qualified immunity bars Plaintiff's claims.

**B.  Plaintiff's Opposition**

Plaintiff filed his opposition on January 15, 2025.  (ECF No. 21).  Plaintiff argues that Dr. Holmes and Dr. Gu examined Plaintiff but were deliberately indifferent to his chronic pain and failed to provide him with prescribed orthotics he has used since 2006.  Plaintiff also argues that Moving Defendants do not contest that Plaintiff suffers pain because of his condition and that he will continue to suffer pain when walking.

Plaintiff contends that the complaint details "who he complained to about his footwear needs, when he complained, and how each defendant responded to his reported symptoms of pain."  (ECF No. 21 at p. 3).  Plaintiff argues that he put Defendants Gates and Mevi on notice through the appeals process that he was being subjected to unconstitutional conditions, but Defendants Gates and Mevi failed to remedy the alleged violations despite their ability to do so.  Plaintiff similarly argues that Defendants Johnson, Magana, Sustaita, Longcor, and Longia knew Plaintiff had a "medical need for orthotic shoes" and that he was suffering pain but failed to intervene or provide him with orthotic shoes.

6

### C. Moving Defendants' Reply

Moving Defendants filed a reply brief on January 29, 2025. (ECF No. 22). Moving Defendants reiterate their argument that the grievance logs demonstrate Dr. Holmes and Dr. Gu provided Plaintiff with medically appropriate treatment for his feet. Moving Defendants also argue that Dr. Mevi, Gates, Johnson, Magana, Sustaita, Longcor, and Longia were not deliberately indifferent because they were not aware of the alleged unconstitutional condition, and each Moving Defendant acted without deliberate indifference because they concurred with the providing doctors' determination that Plaintiff did not meet the prison's new criteria for orthotics.

## III.   LEGAL STANDARD

### A. Motion to Dismiss

Federal Rule of Civil Procedure 12 permits a party to file a motion to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). "At the motion to dismiss phase, the trial court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff." *In re Tracht Gut, LLC,* 836 F.3d 1146, 1150 (9th Cir. 2016). "However, the trial court does not have to accept as true conclusory allegations in a complaint or legal claims asserted in the form of factual allegations." *Id*. In addition, *pro se* pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S.

at 678; *see also Whittaker Corp. v. United States*, 825 F.3d 1002, 1006 (9th Cir. 2016) ("'Dismissal is proper when the complaint does not make out a cognizable legal theory or does not allege sufficient facts to support a cognizable legal theory.'").

### B. Deliberate Indifference to Serious Medical Needs

"Under 42 U.S.C. § 1983, to maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). "This includes 'both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014).

"First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (citation omitted); *see also Colwell*, 763 F.3d at 1066 ("Indications that a plaintiff has a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.").

The Ninth Circuit has held that the "'existence of chronic and substantial pain' indicates that a prisoner's medical needs are serious." *Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (citation omitted).

"Second, the plaintiff must show the defendant's response to the need was deliberately indifferent." *Wilhelm*, 680 F.3d at 1122. "A prison official is deliberately indifferent under the subjective element of the test only if the official 'knows of and disregards an excessive risk to inmate health and safety.'" *Colwell v. Bannister*, 763 F.3d at 1066. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

8

"Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Colwell v. Bannister,* 763 F.3d at 1066.

"'Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (citation omitted). "Typically, '[a] difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference.'" *Edmo v. Corizon, Inc.,* 935 F.3d 757, 786 (9th Cir. 2019) (citation omitted). "But that is true only if the dueling opinions are medically acceptable under the circumstances." *Id*.

### C.  Qualified Immunity

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  "Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case." *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009).

"'A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"  *Horton by Horton v. City of Santa Maria,* 915 F.3d 592, 599 (9th Cir. 2019).  "Although the Supreme Court 'does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.'" *Evans v. Skolnik*, 997 F.3d 1060, 1066 (9th Cir. 2021) (citing *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)).

"[C]learly established law should not be defined at a high level of generality." *Martinez v. City of Clovis*, 943 F.3d 1260, 1275 (9th Cir. 2019) (citation and internal quotation marks omitted).  However, "[i]t is not necessary to have a case involving a heart attack, a case

involving appendicitis, or a case involving a bowel obstruction for a § 1983 claim based on one of those conditions to survive qualified immunity." *Russell v. Lumitap*, 31 F.4th 729, 737–38 (9th Cir. 2022). "If the operative complaint 'contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right,' then plaintiffs are 'entitled to go forward' with their claims." *Keates v. Koile*, 883 F.3d 1228, 1235 (9th Cir. 2018).

## IV.    ANALYSIS

### A.  Moving Defendants' Motion to Dismiss Claims Against Holmes and Gu

Moving Defendants first argue that Plaintiff's claim against Defendants Holmes and Gu should be dismissed because the grievance documents, which are attached to Defendants' motion to dismiss, demonstrate that Holmes and Gu provided medically appropriate care and merely disagreed with Plaintiff about the proper course of treatment.

#### 1.  Incorporation by Reference

As an initial matter, the Court must consider whether it is appropriate to consider the documents that Moving Defendants rely on in their motion to dismiss, and if so for what purpose.

In support of their motion to dismiss, Moving Defendants attach over 80 pages of exhibits, comprising of Plaintiff's grievances about his medical issues and the institution's responses to those grievances. (ECF No. 20-2, Bailey Decl. ¶¶ 3-9, Exhibits A-E). Moving Defendants claim that the Court may consider this evidence in connection with their motion to dismiss under the incorporation-by-reference doctrine because Plaintiff's complaint references the grievances and responses and quotes from some of them.

"Generally, a court may not consider material beyond the complaint in ruling on a Fed.R.Civ.P. 12(b)(6) motion." *Intri-Plex Techs., Inc. v. Crest Group., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (footnote and citation omitted). "There are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201." *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 998 (9th Cir. 2018).

A document may be incorporated by reference "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "But the mere mention of the existence of a document is insufficient to incorporate the contents of a document." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *see also Orellana v. Mayorkas*, 6 F.4th 1034, 1043 (9th Cir. 2021). ("'Although mere mention of the existence of a document is insufficient to incorporate the contents of a document, the document is incorporated when its contents are described and the document is integral to the complaint.'").

The Ninth Circuit has consistently recognized that courts "may" but are "not required to incorporate documents by reference." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1159 (9th Cir. 2012) (citations omitted).

A court may treat a document incorporated by reference "as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908. However, the Ninth Circuit expressly warned that "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Khoja*, 899 F.3d at 1003. "The incorporation-by-reference doctrine does not override the fundamental rule that courts must interpret the allegations and factual disputes in favor of the plaintiff at the pleading stage." *Id*. at 1014.

In this case, it is true that Plaintiff's complaint references a number of grievances and responses to grievances, and at times quotes their contents. *See, e.g.*, ECF No. 1, at 9 ("While at CVSP Plaintiff filed the following: Tracking No: CVSP HC 20000082 Health Care Grievance. . . . On May 01, 2020 CCHS gave a response to Plaintiff grievance [sic] (CVSP HC 20000082) stating . . . ."). Thus, the Court agrees that it can consider those grievances under the incorporation-by-reference doctrine as to what they state, such as when they were dated, who wrote them, or what they said.

However, Moving Defendants' motion to dismiss does not rely on those documents for this purpose. Instead, Moving Defendants rely on these documents as evidence as to what care

1   Plaintiff actually received and ask that Plaintiff's complaint be dismissed because those

2   documents show that Plaintiff received adequate medical care.  For example,  Moving

3   Defendants cite to several pages of grievance documents generally and claim that they

4   "establish that Defendant Holmes examined Plaintiff's feet on at least three occasions and

5   ordered x-rays of Plaintiff's feet," and that "Plaintiff was also able to stand without difficult

6   [sic]," and thus that they show "a doctor working to find a treatment that would alleviate

7   Plaintiff's symptoms that was within CDCR policy."  (ECF No. 20-1, at p. 16).

8        The Court finds that Moving Defendants' argument goes beyond the permissible scope

9   of the incorporation-by-reference doctrine.  Rather than relying on the exhibits for what they

10  are or state on the document, Moving Defendants seek to improperly admit them as evidence of

11  the treatment that was actually provided and of the defendant doctors' state of mind during that

12  treatment.  This goes beyond the scope of the incorporation-by-reference doctrine explained

13  above and improperly seeks to admit evidence to dispute facts stated in Plaintiff's complaint

14  regarding the care he received or failed to receive.  Moreover, it asks the Court to consider such

15  evidence without providing Plaintiff with an opportunity to take discovery and present his own

16  evidence regarding his medical care.

17       Moving Defendants' request for dismissal of the complaint based on these records is

18  also improper because the grievance responses merely provide a general summary of other

19  records and are not themselves direct evidence of the treatment that was provided.  *See, e.g.,*

20  ECF No. 20-2, at p. 23 ("Your health care grievances and health record, and all pertinent

21  policies and procedures were reviewed.  These records indicate . . . .").  They are thus hearsay,

22  which is generally not admissible for the purpose of establishing the truth of what is stated.

23  Fed. R. Evid. 801, 802 ("Hearsay is not admissible unless any of the following provide

24  otherwise . . . .").  Moving Defendants' motion to dismiss does not address this issue or provide

25  any basis for permitting their use as substantive evidence of what care Plaintiff actually

26  received.  While it is possible that Moving Defendants might provide some legal basis and

27  authentication allowing the Court or jury to consider such evidence in the future, such as at

28  summary judgment or trial, they have not done so now. It would thus be improper at the motion

to dismiss stage to find that Moving Defendants provided constitutionally adequate care based on the description of medical care provided in those exhibits.

The Court thus recommends denying Moving Defendants' motion to dismiss to the extent it argues that grievance documents referred to in Plaintiff's complaint establish that Defendants Holmes and Gu provided medically adequate care.

### 2. Sufficiency of Plaintiff's Allegations that Holmes and Gu Acted with Deliberate Indifference

Moving Defendants also generally assert that Plaintiff has failed to sufficiently allege that Defendants Holmes and Gu acted with deliberate indifference to Plaintiff's serious medical needs. (ECF No. 20-1, at p. 16-17).

Again, in his complaint, Plaintiff alleges he was diagnosed with bunions and has been prescribed orthotic shoes since 2006. (ECF No. 1 at p. 9). Plaintiff alleges that records indicate he has repeatedly been found to qualify for orthotics and provided referrals to podiatry "for foot bunion and deformity." (*Id.*) Plaintiff further alleges he experiences "excruciating pain when walking" because of his "painful bunion." (*Id.* at p. 10). Plaintiff alleges he experiences pain in his left foot and knee without orthotics.

Plaintiff alleges that Dr. Holmes refused to provide him with orthotic shoes, refused to refer him to podiatry despite his complaints of excruciating pain, and refused to acknowledge documentation indicating Plaintiff had a previous prescription for orthotics, merely because Plaintiff did not fit the new institutional criteria for such care. (ECF No. 1 at p. 10). Plaintiff alleges that Dr. Gu also refused to provide him with orthotics or refer him to podiatry despite his repeated complaints of pain while walking. Plaintiff also alleges he attempted to show Dr. Gu a document stating Plaintiff was supposed to be supplied orthotics, but Dr. Gu refused to acknowledge the document. (*Id.* at p. 12).

As this Court previously found in its screening order, the Court finds that Plaintiff's allegations are sufficient to state a claim against Defendants Holmes and Gu for deliberate indifference to Plaintiff's serious medical needs. Taking Plaintiff's allegations as true, as the Court must in considering a motion to dismiss, Plaintiff has adequately alleged that he had a

serious medical need for orthotics, that a failure to provide orthotics could result in unnecessary and wanton infliction of pain, and that Defendants Holmes and Gu knew of and disregarded this serious medical need.

Moreover, the Ninth Circuit has held that a denial of a medically necessary treatment solely on the basis of institutional policy constitutes deliberate indifference to serious medical needs. The Ninth Circuit addressed this issue in *Colwell v. Bannister,* 763 F.3d 1060 (9th Cir. 2014), when it reversed a district court's grant of summary judgment where prison defendants had denied an inmate's request for cataract surgery solely based on the institution's policy against providing inmates with cataract surgery if an inmate can manage to function in prison with one eye. The Ninth Circuit stated "We also hold that the blanket, categorical denial of medically indicated surgery solely on the basis of an administrative policy . . . is the paradigm of deliberate indifference." *Id.* at 1063. In that case, multiple medical providers had recommended surgery for Plaintiff's right eye cataract, but the prison's Utilization Review Panel denied the requests for surgery. Plaintiff was told that surgery was denied due to department policy that "one eye only" was needed. All of Plaintiff's grievances were denied by the appeals department and the review panel because the prison's policies considered such surgery to be elective. The district court found that Plaintiff had a serious medical need for cataract surgery, but nevertheless granted summary judgment in favor of defendants because "the Panel's decision to refuse surgery amounted to a difference of opinion over the best course of treatment, and that Colwell had not shown that the NDOC's course of action was 'medically unacceptable' or 'made in conscious disregard of an *excessive risk* to his health.'" *Id.* at 1065. The Ninth Circuit reversed, stating:

> [T]he evidence is undisputed that Colwell was denied treatment for his monocular blindness solely because of an administrative policy, even in the face of medical recommendations to the contrary. A reasonable jury could find that Colwell was denied surgery, not because it wasn't medically indicated, not because his condition was misdiagnosed, not because the surgery wouldn't have helped him, but because the *policy* of the NDOC is to require an inmate to endure reversible blindness in one eye if he can still see out of the other. This is the very definition of deliberate indifference. . . .

1
2
3
4
5
6

> The record supports a conclusion that the specialists' recommendations for surgery were overridden not because of conflicting medical opinions about the proper course of treatment, but because officials enforced the "one eye only" policy. The NDOC's formal cataract-treatment policy, Medical Directive 106, mandates "case by case" consideration of cataract treatment requests taking into account an inmate's "ability to function," but the evidence here shows that the NDOC denies cataract surgery as long as a prisoner has one "good" eye. Colwell was told on multiple occasions that he would not receive treatment because he had a healthy left eye, which made surgery unnecessary despite the examining specialists' opinions.

7
8
9
10

*Id.* at 1068; *see also Guy v. Bick,* No. 221CV00823WBSJDPPC, 2022 WL 1271374, at *2 (E.D. Cal. Apr. 28, 2022), *report and recommendation adopted*, No. 221CV00823WBSJDPPC, 2022 WL 3358116 (E.D. Cal. Aug. 15, 2022) (denying motion to dismiss and rejecting argument that the doctor's adherence to a policy or instructions to deny inmate pain medication after surgery demonstrated a lack of deliberate indifference).

11
12
13
14
15
16

Here too, Plaintiff alleges that Defendants Holmes and Gu (as well as other defendants, addressed below), denied him orthotics, despite previous medical recommendations and Plaintiff's ongoing need for them to address his pain, solely based on a change in prison policy rather than based on a true opinion about the proper treatment for his condition.

The Court thus recommends denying Moving Defendants' motion to dismiss to the extent it argues that Plaintiff's complaint fails to adequately allege deliberate indifference to serious medical needs against Defendants Holmes and Gu.

17
18
19

**B.  Moving Defendants' Motion to Dismiss Claims against Defendants Gates and Mevi**

20
21
22
23
24
25

Moving Defendants next argue that Plaintiff's Claims against Defendants Gates and Mevi should be dismissed because Plaintiff's claims against them are based solely on their review and denial of Plaintiff's health care grievances.  (ECF No. 20-1, at p. 18).  Defendants assert that such claims are "not cognizable."

26
27
28

In support, Moving Defendants cite the case of *Peralta v. Dillard,* 744 F.3d 1076, 1081 (9th Cir. 2014) in which the Ninth Circuit affirmed the grant of judgment as a matter of law in favor of Defendants who were involved in denying Plaintiff's appeals.  As an initial matter, the

*Peralta* case concerned the sufficiency of Plaintiff's evidence at trial, rather than a motion to dismiss, and found that Plaintiff had not sufficiently proven that Defendants were in fact aware of Plaintiff's complaints or need for treatment.  As to one Defendant, the Ninth Circuit found that the evidence at trial established "he didn't independently review Peralta's claims or read his chart before signing off on the second-level appeal. Instead, he relied on the medical opinions of the staff dentists who had investigated Peralta's complaints and already signed off on the treatment plan," and "[e]ven if he had looked at Peralta's chart, he wouldn't have been able to tell whether Peralta had a serious medical need and what the best course of treatment was." *Peralta*, 744 F.3d at 1086-87.  As to another Defendant, the Ninth Circuit found that evidence at trial established, "Although he was required to sign Peralta's second-level appeal, he didn't. Instead, the appeal was signed by Dr. Cassim, a staff medical doctor. Dillard didn't review Peralta's medical records or meet with him prior to the filing of the lawsuit. Dillard testified that he would authorize someone else to sign the second-level responses on his behalf when he knew he would be absent from the prison because appeals had to be processed quickly." *Id.* at 1087-88.

Here, in contrast, Plaintiff has alleged that the institution responses authored by Defendants Gates and Mevi indicate that they had reviewed Plaintiff's medical records, and that those medical records indicated a documented diagnosis of bunions, previous prescriptions by medical professional for orthotics, a chrono indicating "current Issued DME 'Therapeutic shoes/orthotics permanent,'" documentation of Plaintiff's complaints of excruciating pain when walking, redness and inflammation and abnormal position of toe, and the doctors' refusal to provided treatment based on prison policy, rather than an individualized assessment of Plaintiff's medical needs.  Thus, unlike in *Peralta*, Plaintiff has alleged facts indicating that Defendants Gates and Mevi did review Plaintiff's complaints and records, which indicated Plaintiff's serious medical need.

Moreover, the Ninth Circuit has held that a defendant may be liable for deliberate indifference to serious medical needs based on denying a medical grievance.  Specifically, in

*Colwell v. Bannister,* 763 F.3d 1060 (9th Cir. 2014), discussed above, the Ninth Circuit held

that denying a prison grievance could support a deliberate indifference claim, stating:

> The defendants urge us to uphold summary judgment because, they argue, neither Dr. Bannister nor former and now-retired NDOC Director Howard Skolnik was personally involved in any constitutional deprivation. *See Jones v. Williams,* 297 F.3d 930, 934 (9th Cir.2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation...."). . . .
>
> Although many of the events in this case occurred before Dr. Bannister became NDOC Medical Director in 2005, he personally denied Colwell's second-level grievance even though he was aware that an optometrist had recommended surgery and that Colwell's lower-level grievances had been denied despite that recommendation. Accordingly, a reasonable jury could find that Dr. Bannister, pursuant to a policy rather than a considered medical judgment, contributed to the decision to refuse treatment in conscious disregard of an excessive risk to Colwell's health. . . .

*Colwell v. Bannister,* 763 F.3d 1060, 1070 (9th Cir. 2014); *see also Carbajal v. Food Servs.,*

No. EDCV 20-1029-PA (AS), 2022 WL 18911624, at *6 (C.D. Cal. Dec. 14, 2022), *report and*

*recommendation adopted*, No. EDCV 20-1029-PA (AS), 2023 WL 2307439 (C.D. Cal. Mar. 1,

2023) (deliberate indifference was sufficiently alleged where prison officials were informed

that plaintiff had been prescribed a particular diet, without which the plaintiff would suffer

harm, but continued to deny plaintiff's request to receive his medically prescribed diet "even to

the extent that Defendants were merely involved in reviewing Plaintiff's administrative

grievances or appeals").

Moving Defendants also argue that "the grievances also plainly illustrate why Plaintiff's

frequent requests for orthotic footwear were denied: Plaintiff's condition was not of a severity

requiring a referral to podiatry or orthotic footwear." (ECF No. 20-1, at p. 19). Notably,

Moving Defendants cite to more than 70 pages of exhibits for this proposition without quoting

to any actual statement or conclusion by a doctor. Moreover, Moving Defendants fail to

address Plaintiff's main allegation—that the doctors and reviewers based their decision to deny

Plaintiff's orthotics, despite all contrary medical findings of previous doctors, solely on an

institutional change in the criteria for when the institution provides orthotic shoes, without any assessment of Plaintiff's pain or medical needs, nor any determination as to whether that revised criteria was medically supported.  Again, the Ninth Circuit has clearly held that "the blanket, categorical denial of medically indicated surgery solely on the basis of an administrative policy . . . is the paradigm of deliberate indifference."  *Colwell v. Bannister,* 763 F.3d 1060, 1063 (9th Cir. 2014).

The Court thus recommends denying Moving Defendants' Motion to Dismiss Plaintiff's claims against Defendants Mevi and Gates.

### C. Moving Defendants' Motion to Dismiss Claims against the RAP Defendants

Moving Defendants next argue that Plaintiff's claims against Defendants Johnson, Magana, Sustaita, Longcor, and Longia ("RAP Defendants") should be dismissed because (1) Plaintiff's allegations are insufficient to establish they acted with deliberate indifference; and (2) Plaintiff fails to allege their personal participation because they acted as part of a panel.

Plaintiff's complaint alleges that these defendants were all members of the prison's Reasonable Accommodation Panel (RAP) who denied Plaintiff's request for orthotic shoes. Plaintiff alleges that they jointly notified him that "[t]he RAP considered all information provided and determined your reasonable accommodation request for orthotic shoes has been denied."  (ECF No. 1, at p. 13).

Moving Defendants first claim that these allegations are insufficient because "the allegations indicate that the RAP Defendants declined to intervene because Plaintiff's concerns regarding his feet were already being addressed by custody and medical staff," and "[r]ather than consciously disregarding a risk of harm to Plaintiff, the RAP Defendants evaluated Plaintiff's case factors and determined that Plaintiff did not require orthotic shoes as an accommodation."  (ECF No. 20-1, at p. 19-20).  In support of this argument, the Moving Defendants rely on 20 pages of exhibits regarding various grievance correspondence with Plaintiff.  (ECF No. 20-1, at p. 19-20).

As an initial matter, Defendants do not cite to any specific statement in those documents that support their argument, and Plaintiff's complaint certainly did not make such an allegation.

Moreover, for the same reasons discussed above regarding the incorporation-by-reference doctrine, the Court finds that this argument improperly seeks to dismiss the complaint based on evidence not contained in the complaint consisting of hearsay summaries of medical records.

Moving Defendants' argument also disregards Plaintiff's allegations that the medical records reviewed by the RAP panel indicated that Plaintiff had a medical need, had previously and repeatedly been found by medical doctors to require orthotics to address that need, and had been informed that orthotics would not be prescribed purely based on a change in institution policy, and not based on any medical assessment of Plaintiff's medical need.

The Court thus recommends denying the Moving Defendants' motion to dismiss to the extent it relies on various grievance correspondence to claim that the RAP Defendants did not act with deliberate indifference to Plaintiff's serious medical needs.

Moving Defendants also argue that Plaintiff's claim against the RAP Defendants should be dismissed because it does not sufficiently allege their personal participation. Specifically, they argue that Plaintiff's allegation that those Defendants were all part of the panel that denied his request for orthotics "does not articulate how precisely each individual defendant violated Plaintiff's rights." (ECF No. 20-1, at p. 21).

In support, Defendants cite to the portion of *Leer v. Murphy,* 844 F.2d 628, 633 (9th Cir. 1988), which generally summarizes the requirements for a deliberate indifference claim, including that "causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation," and affirms summary judgment in favor of prison officials in a case regarding an assault by another inmate. But here, Plaintiff has alleged that each RAP defendant participated in denying Plaintiff the medically necessary treatment for his serious medical need.

Moving Defendants also rely on the Magistrate Judge's finding and recommendation in the case of *Fairchild-Littlefield v. Atinello*, (E.D. Cal., Oct. 25, 2021, No. 119CV01579NONEGSAPC) 2021 WL 4951549, at *6, *report and recommendation adopted in part, rejected in part sub nom. Fairchild-Littlefield v. Attinello* (E.D. Cal., Feb. 3, 2022, No. 119CV01579JLTGSAPC) 2022 WL 326348, where that Plaintiff's claims against a RAP that

19

denied Plaintiff's request for a wheelchair were dismissed, and the Plaintiff alleged that the panel members "would all be aware of the danger of using a walker as an 'accommodation' to a wheelchair." *Id.* at *6. Unlike in that case, Plaintiff's allegations against the RAP Defendants include that the medical documentation indicated his serious medical need and are not based on the mere assertion that they "would all be aware" of that need. Nevertheless, to the extent this case suggests that members of a panel cannot be held deliberately indifferent because they denied care as a panel, rather than as individuals, this Court disagrees. *See Michaud v. Bannister,* 2012 WL 6720602, at *10 (D. Nev., Dec. 26, 2012, No. 2:08-CV-01371-MMD) (denying Defendants' motion for summary judgment as to the official responding to Plaintiff's grievance and the Utilization Review Panel who also denied that grievance, stating "Williams responded to Michaud's internal prison grievance arising out of Michaud's medical care claims. This suffices to demonstrate personal involvement in the underlying violations. Defendants argue that Williams was not responsible for or personally involved in providing Michaud medical care. . . . Williams personally denied Michaud's grievance. That is enough to hold Williams liable, for it was both the URP that denied Michaud's care as well as Williams who refused to review and correct that denial").

Thus, the Court recommends denying Moving Defendants' motion to dismiss Plaintiff's claims against the RAP Defendants.

### D. Qualified Immunity

Finally, Moving Defendants ask that Plaintiff's claims against them be dismissed based on qualified immunity.

Moving Defendants first argue that Plaintiff has failed to allege that they acted with deliberate indifference, briefly referring to their arguments above. The Court has already addressed those arguments. Notably, Moving Defendants' motion fails to cite the Ninth Circuit's decision in *Colwell*, stating "the blanket, categorical denial of medically indicated surgery solely on the basis of an administrative policy . . . is the paradigm of deliberate indifference." *Colwell,* 763 F.3d at 1063.

20

Next, Defendants argue that there was no clearly established law at the time that established that Defendants' alleged actions violated the Constitution. Moving Defendants again cite to *Peralta* (without quotation or discussion) to argue that "the Ninth Circuit has plainly established that reviewing a health care grievance, without more, is insufficient to establish liability under § 1983." (ECF No. 20-1, at p. 23). This is not an accurate statement of the Court's opinion in *Peralta*, as discussed above. And, again, Defendants ignore the Ninth Circuit's decision in *Colwell*, holding that Plaintiff's complaint could proceed against the prison official who denied Plaintiff's grievance because that defendant "personally denied Colwell's second-level grievance even though he was aware that an optometrist had recommended surgery and that Colwell's lower-level grievances had been denied despite that recommendation. Accordingly, a reasonable jury could find that Dr. Bannister, pursuant to a policy rather than a considered medical judgment, contributed to the decision to refuse treatment in conscious disregard of an excessive risk to Colwell's health." 763 F.3d at 1070. *See also Snow v. McDaniel*, 681 F.3d 978, 989 (9th Cir. 2012), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (holding a warden and associate warden who were aware of grievances regarding the denial of a recommended hip surgery and failed to act to prevent further harm were not entitled to summary judgment).

Finally, Moving Defendants' claim that the RAP panel is entitled to qualified immunity, relying on a district court case granting summary judgment in favor of a panel where the treating physician documented that plaintiff did not need the accommodation. ECF No. 20-1, at p. 24, citing *Joshua v. Baker,* 2018 WL 3008682, at *10 (N.D. Cal., June 15, 2018, No. 16-CV-07129-CRB (PR)) ("The undisputed facts show that on June 3, 2016, RAP denied plaintiff's request for no stairs and ground floor based on plaintiff's DNM designation by his treating physicians, and found that plaintiff already was housed lower bunk."). Here, in contrast, Plaintiff has alleged that the RAP had medical records indicating that medical professionals had previously found that he required orthotics, that he has a continuing medical need, and that his treating doctors denied his request based solely on a change in prison policy. *See Colwell v. Bannister*, 763 F.3d 1060, 1070 (9th Cir. 2014) (reversing grant of summary

judgment, because "[a] reasonable jury could find that NDOC officials denied treatment because Colwell's medical need conflicted with a prison policy, not because non-treatment was a medically acceptable option"). Construing Plaintiff's allegations as true, the RAP defendants would not be entitled to qualified immunity.

Accordingly, dismissal is not warranted at this stage based on qualified immunity.

**V.    CONCLUSION AND RECOMMENDATIONS**

For the reasons explained above, IT IS RECOMMENDED that:

(1) Moving Defendants' motion to dismiss (ECF No. 20) be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **June 12, 2025**                    /s/ Erica P. Grosjean
                                              UNITED STATES MAGISTRATE JUDGE